UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEROLD A. KUEHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19-cv-01197-JAR |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Gerold A. Kuehl's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

**I.   BACKGROUND**

On January 5, 2016, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning July 15, 2014 due to a back injury, left knee injury, heart condition, and Type I diabetes. (Tr. 251). Plaintiff's application was denied on May 23, 2016. (*Id.*). Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on April 10, 2018. Plaintiff was represented by counsel at the hearing. The ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued a written decision denying Plaintiff's application on September 10, 2018. (Tr. 10-28). On March 13, 2019, the

Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Tr. 1-7). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Plaintiff filed this appeal on May 7, 2019. (Doc. 1). Defendant filed an Answer on July 15, 2019. (Doc. 8). Thereafter, Plaintiff filed a Brief in Support of Plaintiff's Complaint (Doc. 18), and Defendant filed a Brief in Support of the Answer. (Doc. 20).

## II.    FACTS

The Court adopts Plaintiff's Statement of Material Facts (Doc. 19) to the extent they are admitted by Defendant (Doc. 20-1). The Court further adopts Defendant's Statement of Additional Material Facts (Doc. 20-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.   LEGAL STANDARDS

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018); *see also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court defers heavily to the findings and conclusions of the Social Security Administration. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)). The Court may not reverse merely because substantial evidence exists in the record that

would support a contrary outcome or because the court would have decided the case differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016).

A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Id.* In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *see also Stamper v. Colvin*, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The social security administration has established a five-step process, described below, for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations ("Listings"). 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00;

20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. SSR 96–8p.

At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his or her age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); *see also Stamper*, 174 F. Supp. 3d at 1063.

**IV. DECISION OF THE ALJ**

The ALJ determined that Plaintiff suffered from the severe impairments of coronary artery disease ("CAD"), diabetes mellitus I (also known as Type I diabetes), and status post left-knee fracture, but that no impairment or combination of impairments met or medically equaled the severity of one of the impairments in the Listings. (Tr. 16). The ALJ acknowledged records indicating that Plaintiff also suffered from degenerative disease of the lumbar spine and left elbow bursitis, but concluded these were non-severe impairments. (*Id.*).

5

After considering the entire record, the ALJ found that Plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR § 404.1567(c). (Tr. 17-20). The ALJ stated that certain of Plaintiff's statements regarding the intensity, persistency and limiting effects of his symptoms were not entirely consistent with the objective medical evidence. (Tr. 19). Specifically, the ALJ noted that Plaintiff continued to perform household chores, play doubles tennis, and engage in other activities consistent with the RFC. (*Id*.).

Based on this RFC, the ALJ found that Plaintiff retains the ability to perform past relevant work as President, Small Business Owner, and Alarm Servicer/Installer. (Tr. 21). The ALJ stated that, per the Dictionary of Occupational Titles ("DOT") lists, each of these positions requires medium exertional work or less. (*Id*.). The ALJ also determined, based on Plaintiff's age, education, work experience, and RFC, that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (Tr. 22).

Thus, the ALJ found Plaintiff was not disabled at any time from July 15, 2014 through June 30, 2017, the date last insured. (*Id*.).

**V.      DISCUSSION**

At the time of the hearing, Plaintiff was sixty-four years old and had a college education. (Tr. 204). Plaintiff suffered a knee injury while playing basketball in 1983, and then a back injury while pulling carpeting into a van in 1998. (Tr. 205-06). Recently, Plaintiff fell off a ladder, reinjuring his knee and hurting his elbow. (Tr. 206-07). While the medical record evidence clearly indicates Plaintiff has been treated for various impairments, Plaintiff has not shown such impairments prevent him from engaging in substantial gainful work. Therefore, the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

    **a. Substantial evidence supported the ALJ's determination that Plaintiff's back and elbow injuries were not severe, and any potential error would be harmless.**

At step two of the five-step process, the ALJ must assess whether the claimant has a severe mental or physical impairment that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii); 416.909, 416.920(a)(4)(i)-(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). Plaintiff bears the burden of establishing that his impairment is severe. *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." *Id*. at 708.

The ALJ found that Plaintiff's CAD, diabetes mellitus I, and status post left knee fracture constituted severe impairments. Plaintiff claims that the ALJ erred by determining Plaintiff's lumbar spine and elbow impairments were non-severe. Plaintiff was evaluated for lower back pain on November 30, 2015, and an X-ray revealed mild degenerative disc change at L4-L5. (Tr. 565-66; 593). Plaintiff subsequently began physical therapy, where he reported that he had experienced periodic episodes of lower back pain every two to six weeks for the past twenty-five years. (Tr. 778). Plaintiff was "pleased with his progress" when discharged from physical therapy on January 11, 2016, and continued improvement was anticipated. (Doc. 19). Plaintiff also injured his elbow after falling from a ladder, and X-rays revealed elbow effusion and mild olecranon bursitis. (Tr.

630-31). Plaintiff acknowledged during his hearing that the elbow injury did not cause him extreme pain. (Tr. 19).

The ALJ considered Plaintiff's medical history and determined, based on his review of the entire record, that the injuries were not severe. The ALJ specifically noted that Plaintiff complained of moderate lower back pain, was able to heel and toe walk without difficulty, and had "five out of five" lower extremity strength. (Tr. 16). Plaintiff's ability to regularly play tennis also factored into the ALJ's determination. (*Id.*). Considering that Plaintiff bears the burden of establishing his injuries were severe and the substantial evidence relied upon by the ALJ, this Court finds that there was sufficient basis for the ALJ's determination.

Even if the ALJ did err in his assessment of the back and elbow injuries' severity, courts frequently find that the exclusion of a particular impairment as severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis. See *Hankinson v. Colvin*, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013); *Givans v. Astrue,* No. 4:10–CV–417–CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the RFC); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

In his RFC analysis, the ALJ considered the cumulative effect of the impairments claimed by Plaintiff, including his back and elbow injuries. (Tr. 18). The ALJ acknowledged Plaintiff's claimed difficulties and the applicable medical records regarding lifting heavy objects, squatting,

8

and bending. The ALJ also noted that Plaintiff took part in physical therapy for his back pain and was given a home exercise program. (Tr. 19). Plaintiff's medical records reveal that the severity of his back pain decreased to "1/10" after therapy and Plaintiff was able to play tennis "without return of symptoms." (Tr. 782). After carefully considering the evidence related to Plaintiff's impairments, including the non-severe impairments, the ALJ made his RFC assessment. This demonstrates that the ALJ adequately considered the limitations attributable to Plaintiff's back and elbow impairments, rendering any potential step two error harmless.

b. **An appropriate balance of medical and non-medical evidence supports the RFC.**

Plaintiff claims that the ALJ made conclusory statements and "overstepped the bounds of his expertise as a layperson, translating nuanced raw medical evidence into a functional capacity assessment." (Doc. 18 at 9). An ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). While the ALJ is responsible for determining a claimant's RFC, the record must include "some medical evidence" supporting the finding. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).

In his RFC, the ALJ carefully examined each impairment and grounded his findings in specific areas of the medical record. As to Plaintiff's Type I diabetes, the ALJ noted that Plaintiff had been diabetic for forty years, complied with his medication, had no end organ damage, and generally managed the impairment effectively. (Tr. 19). *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) (impairment controlled by treatment or medication cannot be considered disabling); *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (same).

9

Regarding Plaintiff's CAD, the ALJ discussed records indicating Plaintiff had heart functions within normal range, normal baseline ventricular function, and denied experiencing chest pain or shortness of breath. (Tr. 19). Finally, when considering Plaintiff's knee injury, the ALJ relied on the report of Dr. Rick Wright (discussed further below), which generally described minimal limitations and specifically found that Plaintiff would not miss work due to his impairment. (Tr. 20).

The ALJ appropriately considered additional evidence relating to the claimant's daily activities. Notably, Plaintiff was able to engage in chores, mow his lawn with a tractor, perform simple household repairs, shop for groceries, walk three to five miles, and even play doubles tennis. (Tr. 18-20). These activities show that Plaintiff can engage in substantial gainful activity. *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (citing *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937–38 (8th Cir. 2006); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005)).

Both Plaintiff and Defendant reference substantial, sometimes contradictory evidence from Plaintiff's medical record (Doc. 18 at 6-11; Doc. 20 at 6-10). Plaintiff cites certain medical evidence indicating that he experienced heart palpitations, shortness of breath, and tingling of the feet. (Doc. 18 at 9-10). Defendant, conversely, cites a statement from Plaintiff's treating cardiologist that Plaintiff was "doing really well" and evidence indicating Plaintiff's blood sugars were controlled with medication. (Doc. 20 at 6). Plaintiff claims that he can only walk for a short time on flat surfaces (Doc. 18 at 10), while Defendant notes that Plaintiff was walking nine to fifteen miles per week during the period in which he was supposedly disabled. (Doc. 20 at 8).

Again, "[i]t is not the role of this court to reweigh the evidence presented to the ALJ." *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). Instead, we ask whether there is enough evidence that a reasonable mind would accept it as adequate to support

the ALJ's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). This Court finds that the ALJ adequately considered and relied upon the relevant medical evidence in his RFC.

Beyond the claim that the ALJ's decision was not supported by substantial medical evidence, Plaintiff contends that the decision failed to include a narrative discussion as required by SSR 96-8p. (Doc. 18 at 6). The ALJ, however, is "not require[d] to follow each RFC limitation with a list of specific evidence on which the ALJ relied." *Hilgart v. Colvin*, No. 6:12–0322–DGK, 2013 WL 2250877, at *4 (W.D. Mo. May 22, 2013). The ALJ considered each of Plaintiff's impairments, addressed key medical and other evidence, and provided a thorough summary of his findings. (Tr. 20). The ALJ relied on an appropriate combination of specific medical facts and nonmedical evidence to reach his determination and provided a sufficient narrative explanation for the decision.

c. **The ALJ gave proper weight to the portions of Dr. Wright's opinion supported by the medical record.**

Plaintiff argues that the ALJ failed to properly consider opinion evidence from Dr. Rick Wright, a treating physician of Plaintiff. Under the applicable social security regulations, the opinion of a treating physician is normally entitled to controlling weight. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.* The ALJ should consider several factors in weighing medical opinions from a treating source, including the length of the treatment relationship and the frequency of examination. *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (quoting *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir.

11

2007)). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give "good reasons" for doing so. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)).[1]

On April 2, 2018, Plaintiff met Dr. Wright as part of a surgical consult for Plaintiff's left knee injury, and Dr. Wright accordingly performed a Residual Functional Capacity Assessment ("RFCA") on April 5, 2018. (Doc. 19 at 7; Tr. 1618-24). Dr. Wright's RFCA only addressed Plaintiff's left knee injury, as Plaintiff acknowledges, though Plaintiff had previously visited physician assistants working in collaboration with Dr. Wright. (Doc. 18 at 5). The ALJ referenced Dr. Wright's opinion that Plaintiff could lift and carry fifty pounds, stand/walk for six hours in an eight-hour workday, and would never miss work due to his impairments. (Tr. 20). The ALJ gave "great weight" to these opinions as they were "supported by a majority of the objective medical evidence." (*Id.*). Plaintiff notes, however, that Dr. Wright also determined Plaintiff would occasionally experience pain or other symptoms severe enough to interfere with simple work tasks, and Plaintiff would need to walk for a few minutes each hour. Therefore, according to the Plaintiff, either Dr. Wright's opinion is invalid (and the ALJ must explain why) or the Plaintiff is disabled.

The Court finds no error in the ALJ's reliance on portions of Dr. Wright's assessment. First, an ALJ appropriately gives more weight to a medical opinion that is consistent with the record as a whole. 20 CFR § 404.1527(c)(4). In the same portion of his decision discussing Dr. Wright's opinion, the ALJ cites medical evidence that Plaintiff could heel to toe walk without

---

[1] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff filed his claim in 2016, so the previous Regulations apply.

difficulty and walk three to five miles without experiencing shortness of breath, indicating Dr. Wright was not the sole basis for the ALJ's ultimate decision. (Tr. 20).

Second, the ALJ could appropriately discount elements of Dr. Wright's opinion based on inconsistencies in the report. Dr. Wright stated that Plaintiff would never require unscheduled breaks or miss a day of work due to his impairments, assessments that are potentially inconsistent with the finding that Plaintiff would be occasionally unable to perform simple tasks. (Tr. 1619-21). An ALJ "may discount or even disregard the opinion of a treating physician where . . . a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Anderson v. Astrue*, 696 F.3d 790 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). See also *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). Given the inconsistency found within Dr. Wright's opinion – namely, that Plaintiff's impairment may occasionally interfere with his ability to work, but Plaintiff would never need to miss work or take a break due to his impairments – the ALJ acted reasonably in accepting that portion of the opinion supported by other objective medical evidence. *See Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that were unsupported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted).

Finally, even if the Court were to accept Dr. Wright's more restrictive assessments as accurate, the ALJ's overall assessment remains supported by substantial evidence (Doc. 18 at 12). The ALJ cited numerous records across Plaintiff's extensive medical history; the inconsistency in Dr. Wright's report does not overcome the ALJ's thorough examination of and reliance upon the entire record. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). While a reasonable person could

13

come to a different conclusion than the ALJ upon reviewing the full record, Plaintiff has not established that the ALJ's decision "falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

### d. **The ALJ effectively assessed credibility utilizing the *Polaski* framework.**

In evaluating a claimant's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Morris v. Berryhill*, No. 1:17-CV-00212 NCC, 2019 WL 1129990, at *3 (E.D. Mo. Mar. 12, 2019) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Id*. (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Id*. (quoting *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003)).

Plaintiff claims that the ALJ failed to perform a proper credibility determination. An ALJ need not discuss each *Polaski* factor separately "as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). Plaintiff's subjective complaints regarding pain "may be discounted if there are inconsistencies in the evidence as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

The ALJ specifically identified and gave careful consideration to the *Polaski* framework, ultimately determining that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms." (Tr. 18). The ALJ appropriately referenced

14

Plaintiff's ability to play tennis, mow his lawn with a tractor, perform household repairs, and walk three to five miles as activities "that are inconsistent with Plaintiff's allegations of disabling symptoms and limitations." (*Id*.). The ALJ also considered the applicable medical evidence, including Plaintiff's improvement after participating in physical therapy, ability to heel to toe walk without difficulty, and lower extremity strength. (Tr. 18-20). The ALJ also relied on Dr. Wright's opinion, which "noted little in the way of residual limitations." (Tr. 20).

Here, the ALJ identified the *Polaski* framework and made a proper credibility determination based on the relevant evidence in the record.

### e. **The ALJ's failure to ask the VE about potential DOT conflicts was harmless error.**

During the hearing, the VE determined that Plaintiff's three prior jobs as President, Small Business Owner, and Alarm Servicer/Installer respectively required sedentary, light, and medium work. (Tr. 230). Plaintiff's attorney raised a potential conflict between the DOT description of President and Plaintiff's actual job function as President. (Tr. 230-36). The VE agreed that the nature of Plaintiff's role as President was more of a "working president" and therefore "over and above sedentary." (Tr. 236). Upon further questioning by the ALJ, the VE stated that Plaintiff's work as President was "heavy and skilled." (Tr. 238). Plaintiff claims that the ALJ erred by failing to inquire whether the VE's testimony was consistent with the DOT. SSR 00-4p states that ALJs must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT]." The ALJ "has an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (internal quotations omitted).

The ALJ's failure to specifically inquire whether the VE's testimony was consistent with the DOT, as required by the applicable social security regulations, is harmless, where, as here,

Plaintiff cannot establish any actual conflict between the VE evidence and the DOT. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). In other words, , the Plaintiff has provided no indication "that the ALJ would have decided differently if the error had not occurred." *Polk v. Saul*, No. 4:18-cv-01883 SRC 2019 WL 6683161, at *4 (E.D. Mo. Dec. 6, 2019) (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

The ALJ found at step four of the process that Plaintiff remained capable of performing his prior jobs as Small Business Owner and Alarm Servicer/Installer. (Tr. 21). The ALJ also proceeded to step five and found that there existed jobs in significant numbers in the national economy that Plaintiff could perform at medium exertion levels. (Tr. 22). The ALJ also appropriately utilized hypotheticals to elucidate the limitations caused by Plaintiff's impairments. (Tr. 231-33). *See Guilliams v. Barnhart*, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ). Therefore, even if Plaintiff's role as President in fact constituted heavy work, the ALJ's decision of "not disabled" would be unchanged.

Because Plaintiff fails to identify any meaningful conflict between the VE's testimony and the DOT, the Court finds the ALJ's failure to inquire about potential conflicts constituted harmless error.

## VI.   CONCLUSION

Having found that there was substantial evidence in the record as a whole to support the ALJ's determination that Plaintiff is not disabled, the Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of September, 2020.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE